UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Crim. No. 11-cr-148 (MJD/LIB)

      Plaintiff,

v.                                                                    **REPORT AND RECOMMENDATION**

BYRON KEITH KINGBIRD, JR.,

      Defendant.

---

The above matter came before the Court upon the Defendant's Motion to Suppress Statements, Admissions and Answers, and Motion to Sever Counts. The Motions have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, it is recommended that the Defendant's Motions be denied.

**I.     Motion to Suppress Statements**

    A.     Background

On May 2, 2011, Defendant Byron Keith Kingbird, Jr. was indicted on one count of sexual abuse of a minor in violation of 18 U.S.C. §§ 1151, 1153(a), and 2243(a)(1), and one count of abusive sexual contact in violation of 18 U.S.C. §§ 1151, 1153(a) and 2244(a)(5). The events underlying the Indictment are alleged to have occurred between January 2009 and February 2009 within the exterior boundaries of the Red Lake Indian Reservation. The following factual findings are based upon the testimony and exhibits offered at the evidentiary hearing that was held on June 30, 2011.

1

In March 2011, Special Agent Joe Ogden of the Federal Bureau of Investigation ("FBI") testified regarding his involvement in an investigation regarding allegations that the Defendant sexually assaulted his nieces in early 2009. On March 7, 2011, Ogden and Special Agent Rob Mertz, also of the FBI, interviewed the Defendant regarding the allegations.

Shortly before March 7, 2011, Ogden had unsuccessfully attempted to contact the Defendant by going to his residence and by leaving him a voicemail message. The Defendant later returned Ogden's call, at which time, Ogden asked the Defendant if he would be willing to meet, and the Defendant agreed to an interview. The meeting was arranged to take place at 1:00 p.m., on March 7, 2011, at the Red Lake Police Department station.

Ogden stated that the Defendant's residence was not close enough for him to walk to the station, and accordingly, the Defendant received a ride to the station by a member of his family. Ogden and Mertz observed the Defendant enter the station and met him in the lobby. The agents welcomed him and thanked him for coming. At the their request, the Defendant followed the agents into a conference room. The Defendant sat at the conference room table nearest the door to the lobby, and Ogden and Mertz sat across from the Defendant.

At the beginning, the agents informed the Defendant that he was free to leave at any point during the interview. The agents were wearing blue jeans and polo shirts. Although both agents were wearing firearms, the weapons were not visible and were not drawn or brandished at any point during the interview. The Defendant was not placed under arrest, and the agents did not display their handcuffs or otherwise attempt to handcuff the Defendant during the interview.

Initially, the Defendant was calm and did not appear to be upset. The interview was not recorded pursuant to FBI policy.

The agents again thanked the Defendant for coming in to talk to them and asked him if he needed anything to drink. The agents then informed the Defendant that they had a few questions for him and advised that they first had to read him the Miranda warning, see Miranda v. Arizona, 384 U.S. 436 (1966). The agents provided him with a copy of the FBI's Advice of Rights form, which they read to the Defendant line by line. (Govt. Exh. 1). The Defendant informed the agents that he is able to read, and he was given the opportunity to read the form if he wanted to. The agents then asked if the Defendant understood his rights, and the Defendant stated that he did, and he signed the Advice of Rights form. Ogden testified that the agents did not ask the Defendant any questions about the allegations before he signed the Advice of Rights form. The interview lasted approximately 40 minutes.

After the Defendant signed the form, the agents questioned the Defendant in a casual and conversational manner. They told the Defendant about the allegations, which the Defendant initially denied. According to Ogden, the Defendant appeared to understand what the agents were saying, he responded appropriately to the questions, and he did not appear to be intoxicated.

Early on in the interview, the Defendant made some admissions regarding the allegations, and around this time, the Defendant became upset and began to cry. However, Ogden stated that the Defendant generally remained calm during the entire interview.

Ogden testified that at one point the Defendant began talking about an incident that had occurred on Halloween night. The Defendant may have made some admissions regarding things

he did that night, but this incident is not the basis for the charges in the Indictment and was not the reason for the interview.

At one point during the interview, the agents asked the Defendant if he wanted to make a written statement. The Defendant agreed to provide a written statement, so the agents gave him a piece of paper and a pen, and the Defendant began to write. According to Ogden, the agents did not coerce, threaten, or make any promises in order to get the Defendant to make a written statement.

The Defendant pushed the paper towards Ogden and Mertz when he was finished. The agents asked the Defendant if there was anything else that he wanted to write, and the Defendant took the paper back and wrote a few more things. The agents then asked the Defendant if he wanted to sign his statement, and the Defendant signed his name at the bottom of the paper. (Govt. Exh. 2). The Defendant's written statement is fashioned as an apology to the victims. Ogden testified that the agents did not suggest that the Defendant write to the victims and that the agents did not tell the Defendant what to write. According to Ogden, at the end of the interview, the Defendant had tears in his eyes and appeared to be somewhat upset, but he remained calm.

The agents then thanked the Defendant for coming down to the station to speak with them and told the Defendant he was free to leave. The Defendant then left the station. At the end of the interview, the Defendant was not placed under arrest and he was not told that formal charges would be filed.

    B.    <u>Discussion</u>

The Defendant argues that his written and verbal statements were involuntary and that they should therefore be suppressed.

"In determining whether a defendant's statement is voluntary, we examine the totality of the circumstances surrounding the confession." United States v. Hambrick, 630 F.3d 742, 749 (8th Cir.), cert. denied, 131 S.Ct. 2919 (2011). "'The test for determining the voluntariness of a confession is whether the police extracted the confession by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Estey, 595 F.3d 836, 839 (8th Cir.), cert. denied, 130 S.Ct. 3342 (2010), quoting United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008). "[W]e consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010), quoting Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004). "The government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence." United States v. Muhlenbruch, 634 F.3d 987, 998 (8th Cir. 2011), citing United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

After considering the totality of the circumstances, the Court concludes that the Defendant's statement was voluntary. There is nothing to suggest that the Defendant's will was overborne by the questioning techniques that were employed, and indeed, the record is devoid of any evidence of coercive police conduct. The interview was relatively short, and the tone of the questioning was conversational and casual. LeBrun, 363 F.3d at 726 ("We place substantial weight on the fact that [the defendant] confessed after a mere thirty-three minutes.") The agents advised the Defendant of his Miranda rights prior to conducting the noncustodial interview, and

5

he indicated that he understood and voluntarily waived his Miranda rights. The Defendant arrived at and left the station on his own. The agents advised the Defendant that he could terminate the interview and leave at any time, and the Defendant never voiced any objection to participating in the interview. The Defendant was not handcuffed or placed under arrest, and the interview was conducted in a conference room. The FBI agents did not verbally or physically threaten the Defendant, nor did they make any direct or indirect promises as an inducement for his confession.[1] Although the Defendant became upset and started crying, he remained calm throughout the interview.

The Defendant argues that his statement was involuntary because he merely wrote down what the agents told him to write; however, this claim is not born out by the record. SA Ogden's uncontroverted testimony was that the agents did not tell the Defendant what to write, and the Court finds his testimony credible. In addition, there is no evidence that the agents forced him or otherwise used coercive or deceptive tactics in getting the Defendant to provide a written statement. Simply put, the record shows that the Defendant chose to make the written statement and further decided what to write without coercion.

Next, the Defendant argues that the his lack of education, his age, his lack of experience with law enforcement, and his general lack of sophistication contributed to the involuntariness of

---

[1] The Defendant claims that a reasonable person of his age, education, and experience would not have felt free to leave because he was far from home and sitting in a room with two federal law enforcement agents. While this may not have been a comfortable or pleasant situation, interrogations always involve some level of discomfort and pressure, given their purpose. See, United States v. Santos-Garcia, 313 F.3d 1073, 1073 (8th Cir. 2002)("To state the obvious, 'interrogation of a suspect will involve some pressure because its purpose is to elicit a confession.'"), quoting United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001). The Court does not agree that the circumstances of the present case went beyond the normal level of pressure that would be attendant to any police questioning, and therefore, the Court cannot credit the Defendant's claim that he did not feel free to terminate the interview or leave the station.

his statement.[2]  "Although age, education and experience are factors in the voluntariness analysis, they are not dispositive." United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995)(assuming that the defendant had a somewhat diminished capacity due to lower than average intelligence, but finding statement voluntary because there was no evidence of coercive police capacity), citing Colorado v. Connelly, 479 U.S. 157, 165 (1986).  SA Ogden testified that the Defendant was lucid and responded appropriately to the agents' questions, and there has been no showing that the Defendant's intelligence rendered him incapable of understanding the significance of the situation.  Although the Defendant became somewhat upset during the interview, he remained in control.  Even assuming that the Defendant has a somewhat diminished capacity to resist police coercion than a more sophisticated or experienced individual, there is simply no evidence that the Defendant's will was overborne or that the agents exploited the Defendant's personal characteristics in order to obtain a confession through the use of coercive or devious tactics.  United States v. Robinson, 20 F.3d 320, 322 (8th Cir.)("Coercive police activity is a necessary predicate to finding that a confession is not voluntary in the constitutional sense."), cert. denied, 513 U.S. 913 (1994).

The Court is cognizant that the Defendant argues that the Defendant may have been confused about what night the agents were asking him about.  The record is not entirely clear on the issue of whether the Defendant may have been talking about what he did on some other occasion, but there is no indication that the statements made by the Defendant were involuntary.  The evidence is clear that the Defendant consciously chose to answer the FBI agents' questions, for the reasons already stated above.  There is nothing to suggest that Agent Ogden or Agent

---

[2]  No testimony or evidence was offered on the Defendant's capacity, but the Defendant appears to rely on information contained in the pretrial investigation report.  This report is not part of the record for the purposes of the present motion.

Mertz intentionally misled or confused the Defendant or that they otherwise utilized deception in order to procure a confession based on the Defendant's confusion about what they were talking about.[3]  The fact that the Defendant may have been talking about some other incident when he confessed may go to the credibility and weight of any admissions, but it does not render his statement involuntary.  See, United States v. Martin, 369 F.3d 1046, 1058 (8th Cir. 2004)("the requirement that the court make a pretrial **voluntariness** determination does not undercut the defendant's traditional prerogative to challenge the confession's **reliability** during the course of the trial.")[emphasis in original, citation and quotations omitted].

In short, the totality of the circumstances establishes that the Defendant's statement was voluntary.  Therefore, the Defendant's motion to suppress should be denied.

## II.     Motion to Sever Counts

The Defendant moves for a severance of the two counts of the Indictment on the grounds that 1) the offenses were improperly joined, 2) the Defendant would be caused to incriminate himself in violation of his Fifth Amendment rights, 3) the Defendant would be prejudiced by the admission of evidence that would otherwise not be admissible on the other count, and 4) the jury will be unable to properly distinguish the evidence for each count and will instead view the evidence cumulatively.  The Government argues that a joint trial would serve the interests of efficiency because the offenses are similar in character and because the same evidence would be offered for both charges.

---

[3] The only thing that the Court can discern from the record is that the Defendant talked about an incident that was not the subject of the interview. The Court cannot say whether the Defendant was actually confused or whether he made these statements for some other reason.

Rule 8(a) of the Federal Rules of Criminal Procedure states that two or more offenses may be properly joined if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." This rule is broadly construed in favor of joinder in order to promote judicial efficiency. United States v. McCarther, 596 F.3d 438, 441-42 (8th Cir. 2010).

As an initial matter, the Court finds that the two counts of the Indictment were properly joined pursuant to Rule 8 because they involve offenses that are the same or similar in character. "'[W]here the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate.'" United States v. Tyndall, 263 F.3d 848, 849 (8th Cir. 2001), quoting United States v. McClintic, 570 F.2d 685, 689 (8th Cir. 1978). In the present case, the Defendant is charged with one count of sexual abuse of a minor, identified as Jane Doe No. 1, and one count of abusive sexual contact of a second victim, identified as Jane Doe No. 2. The offenses both involve allegations of sexual abuse occurring at approximately the same time at the same location with victims from the same family. Moreover, the possibility of evidentiary overlap between the offenses warrants a joint trial of the offenses.

When joinder is proper under Rule 8, as it is in the present case, the defendant seeking a severance has the burden to demonstrate how a joint trial will prejudice his right to a fair trial. United States v. Darden, 70 F.3d 1507, 1527 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996). Federal Rule of Criminal Procedure 14 provides that a district court may order separate trials if a joint trial would cause prejudice to the defendant. "The danger of prejudice to a defendant is inherent in any proceeding in which the Government tries a single defendant for multiple crimes." United States v. Kirk, 528 F.3d 1102, 1107 (8th Cir. 2008). "Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general

9

efficiency of joinder." United States v. Al-Esawi, 560 F.3d 888, 891 (8th Cir. 2009). Therefore, separate trials are required only when the prejudice to a defendant will be "severe or compelling." United States v. Ruiz, 412 F.3d 871, 886 (8th Cir.), cert. denied, 546 U.S. 994 (2005).

The Defendant has failed to show that this is one of the rare cases where a joint trial will cause severe or compelling prejudice.[4] "'Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant['s] separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together.'" United States v. Taken Alive, 513 F.3d 899, 903 (8th Cir. 2008), quoting United States v. Rodgers, 732 F.2d 625, 630 (8th Cir. 1984); See also, United States v. Steele, 550 F.3d 693, 702 (8th Cir. 2008) ("A joint trial does not result in additional prejudice where evidence of one charge would have been admissible in a separate trial on another.") In this case, even if the counts were severed, the evidence would be substantially the same given the close relationship and similarity of the charges. The same witnesses would have to testify at both trials, and evidence of the other sexual assault would be admissible in the trial on both counts. Accordingly, the Defendant will not be prejudiced by a joint trial. See, Tyndall, 263 F.3d at 850 (denying motion to sever two counts alleging sexual abuse against two different victims in connection with incidents that occurred one year apart because the evidence of one offense

---

[4] To the extent the Defendant argues that a joint trial will violate his right against self-incrimination, his argument necessarily fails because the Defendant has failed to meet the high burden that applies to such a claim. A defendant making such an argument must make a "'persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts.'" United States v. McCarther, 596 F.3d 438, 443 (8th Cir. 2010), quoting United States v. Possick, 849 F.2d 332, 338 (8th Cir. 1988). In the present case, the Defendant has made absolutely no showing regarding the testimony he would likely offer and the reason he cannot offer that testimony on the other count.

would be admissible in the trial of the other offense); <u>United States v. Running Horse</u>, 175 F.3d 635, 637 (8th Cir. 1999)(denying motion to sever trial for sexual abuse of one victim from the trial for sexual abuse of a second victim because evidence of the other sexual offenses would have been admissible in the trial on the count that the defendant sought to sever).[5]

In short, because the offenses are similar in character and relate to the same circumstances, they should be tried together, and the Defendant has failed to show that a joint trial is likely to cause him severe prejudice. Therefore, the Defendant's motion to sever should be denied.

### III. Conclusion

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 28] be **DENIED**;

3. Defendant's Motion to Sever Counts [Docket No. 29] be **DENIED**.


Dated: July 22, 2011
        s/Leo I. Brisbois
        LEO I. BRISBOIS
        United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 5, , 2011,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for

---

[5] Where a defendant is accused of a sexual assault, Federal Rule of Evidence 413 provides that evidence that the defendant has committed other offenses of sexual assault is admissible "for its bearing on any matter to which it is relevant."

in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.